FILED
AUG 2 5 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WAYNE A. WILSON )
)
Plaintiff, ) Civil No. 13-0232 (RCL)
)
v. )
)
RAYMOND E. MABUS, JR., et al., )
)
Defendants. )

## MEMORANDUM OPINION

Before the Court is the defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [10] on plaintiff Wayne Wilson's complaint [1]. Wilson filed a complaint alleging employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). Upon consideration of the defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, the plaintiff's Opposition thereto [16], and the defendant's Reply [27], the Court will GRANT the defendant's Motion for the reasons stated below.

I. BACKGROUND

The relevant facts are as follows: plaintiff, Wayne A. Wilson, is an African American male employed since 2002 by the United States Navy as a police officer assigned to the Naval District of Washington ("NDW") in Washington, D.C. According to Mr. Wilson, on November 27, 2009, after drinking, plaintiff fired a gun multiple times after he arrived at his home in Prince George's County Maryland and observed unknown males with his daughters. Compl. ¶ 11. He

1

believed the young men were trespassing on his property.[1] *Id.* Plaintiff was arrested by the Prince George's County Police and charged with criminal reckless endangerment and second degree assault. *Id.* ¶ 12.

As a result of the November 27, 2009 incident, defendant placed plaintiff on indefinite suspension without pay, effective March 12, 2010, pending the disposition of the criminal proceedings against plaintiff, or until the completion of an administrative action. *Id.* ¶ 14; Def.'s Mot. to Dismiss, Ex. 5 (February 16, 2010 Proposed Suspension Letter). On June 15, 2010, plaintiff was acquitted of the criminal charges against him. Compl. ¶ 15. Subsequently, on June 23, 2010, defendant notified plaintiff that his indefinite suspension was terminated and plaintiff could return to active duty effective June 25, 2010. *Id.* ¶ 16.

Plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB") on July 5, 2010, challenging his suspension without pay and his reinstatement without back pay and without restoration to his pre-suspension shift.[2] Def.'s Mot. to Dismiss, Ex. 8 (July 5, 2010 MSPB Appeal). The MSPB dismissed plaintiff's appeal because it was untimely filed. *Id.*, Ex. 9 (August 18, 2010 Initial MSPB Decision). Plaintiff later contacted an EEO counselor on July 6, 2010, and, on September 4, 2010, he filed a formal complaint of discrimination with the NDW EEO Office challenging his suspension without pay and his reinstatement without back pay or restoration to his preferred shift. *Id.* ¶ 26. Plaintiff noted in his EEO Complaint that he was subjected to retaliation and that white officers and female officers receive preferential treatment in shift assignment, pay, and discipline. Def.'s Mot. to Dismiss, Ex. 10 (September 4, 2010 EEO

---

[1] In plaintiff's Opposition to defendant's Motion to Dismiss, plaintiff claims that as he followed the young men out of his house, three of them began to threaten him and move aggressively toward him. Pl.'s Opp. 3, ECF No. 16 Plaintiff asserts that before he fired his gun into the ground, he told them that he was a police officer and that he was armed, but they continued to move towards him. *Id.* at 3–4.

[2] Plaintiff claims he was told, at the time his indefinite suspension without pay was proposed, that he would receive all of his lost pay if he was acquitted of the charges. *Id.* at 4.

Complaint). Defendant dismissed plaintiff's EEO complaint on March 16, 2011 for untimely counselor contact and failure to state a claim of reprisal. *Id.*, Ex. 11 (March 16, 2011 EEO Dismissal of Claims).

Plaintiff's claim of retaliation focuses on an incident on January 4, 2011 in which Officer Cassandra Thompson observed him using his cell phone while standing post and directing traffic, which is a violation of NDW rules.[3] Compl. ¶ 32. As a result, defendant issued plaintiff a proposal to suspend him for five days. *Id.* In January 2012, defendant issued plaintiff a decision to affect the five-day suspension. *Id.* ¶33. Plaintiff contacted the NDW EEO office and later filed an EEO complaint challenging the five-day suspension as unlawful retaliation.[4] *Id.* ¶ 37.

Plaintiff has filed a complaint with the United States District Court for the District of Columbia alleging employment discrimination and retaliation under Title VII based on his race and sex. In response, defendant has filed a motion to dismiss plaintiff's claim of employment discrimination, or alternatively, for summary judgment.

## II. LEGAL STANDARDS

Because the Court finds that plaintiff failed to state a claim for each of the alleged acts of discrimination and retaliation, the legal standard and analysis applied herein pertain only to dismissal for failure to state a claim under Rule 12(b)(6).

### A. Rule 12(b)(6) Dismissal

Under Rule 12(b)(6), a court may dismiss a complaint, or any portion of it, for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A court considering such a motion to dismiss pursuant to this rule must accept all factual allegations in the complaint

---

[3] Defendant states that plaintiff reacted aggressively when confronted about his cell phone use on site. Def.'s Mot. to Dismiss 4. Plaintiff, however, does not provide details about his demeanor towards Officer Thomas or Lieutenant Darryl Tucker during the on-site reprimand.

[4] The EEO office did not accept for investigation plaintiff's claim that defendant retaliated against him by denying his supervisor's December 2010 request to change plaintiff's shifts.

3

as true, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must construe all factual allegations in the light most favorable to the plaintiff, *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal citations omitted). To survive a motion to dismiss, the complaint must contain enough factual allegations to "state a claim that relief is plausible on its face." *Bell. Atl. Corp.*, 550 U.S. at 570. A complaint is "plausible on its face" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotations omitted).

### B. Title VII Discrimination and Retaliation

To state a claim for employment discrimination under Title VII employees must exhaust their available administrative remedies. 42 U.S.C. § 2000e-16(c). An employee must first "initiate contact with an EEO counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). After the EEO investigator completes her investigation of the allegations, the employee may demand either a hearing before an EEOC administrative judge or an immediate final decision. 29 C.F.R. § 1614.106(e)(2); 29 C.F.R. § 1614.108(f). If no final decision has been issued within 180 days of the initial EEO complaint, the employee may file a complaint in federal court. 29 C.F.R. § 1614.407. Exhaustion of administrative remedies is a prerequisite to any civil action alleging Title VII violations.

In a civil action, to sufficiently state a claim for discrimination under Title VII the plaintiff must establish that: "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination" based on one's belonging to a protected class. *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (internal quotations omitted).

## III. DISCUSSION

### A. Plaintiff's Suspension and Reinstatement Without Back Pay

Plaintiff contends that his reinstatement to work without receiving back pay or being restored to his old shift constitutes discrimination based on his race and sex. He alleges in his September 4, 2010 EEO complaint, and again in his Opposition to Defendant's Motion to Dismiss, that when he returned to work he learned of several white employees who had been arrested but were not suspended without pay. He further alleges that a female officer had assaulted a civilian while on duty and another had been arrested on domestic violence charges; however, neither had been suspended or denied pay. Plaintiff believes these instances are evidence of preferential treatment for white and female employees.

Importantly, there are no allegations contained in plaintiff's complaint, EEO filings, or court filings that a white or female employee has been suspended and subsequently reinstated with back pay. The examples plaintiff provides do not show preferential treatment to white and female employees in similar circumstances. Plaintiff's examples allege employees' criminal actions and job-related punishments, but they are not situations in which an employee has been suspended without pay and reinstated without back pay. As a result, no factual allegations exist to suggest that the adverse employment action creates an inference of discrimination based on race or sex. Therefore, the Court must dismiss plaintiff's claim because plaintiff does not allege sufficient facts that, if taken as true, give rise to an inference of employment discrimination based on race or sex.

In addition, although plaintiff alleges that the discrimination occurred at the time of his reinstatement without issuing back pay or restoration to his old shift, if plaintiff were to claim that discrimination took place at the time of his suspension, then the claim would still be

5

dismissed for failure to exhaust all administrative remedies due to untimely EEO contact. 29 C.F.R. § 1614.105(a)(1). Plaintiff had forty-five days from the time of the alleged adverse employment action to initiate contact with an EEO counselor. *Id.* Because plaintiff's suspension took effect in March 2010, plaintiff did not timely contact an EEO counselor when he initiated contact in early July 2010, well beyond the forty-five day limit. Because untimely claims cannot appropriately be exhausted, the timeliness of plaintiff's claims is dispositive of whether he can sufficiently state a claim to survive defendant's motion to dismiss.

### B. NDW's Failure to Restore Plaintiff to his Old Shift

Plaintiff alleges that NDW's failure to restore him to his old shift also constitutes employment discrimination based on race and sex. To sufficiently state a claim plaintiff must allege he suffered an adverse employment action. An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal citations and quotations omitted). An employee suffers adverse employment action if he "experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities . . . ." *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). An adverse employment action usually inflicts "tangible economic harm," but this was not the case for plaintiff. *Douglas*, 559 F.3d at 552 (citing *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)).

Based on plaintiff's alleged facts, NDW's failure to reinstate him to his old shift has no effect on his pay and causes him no economic harm. Such action does not constitute adverse employment action because it does not affect plaintiff's employment terms, conditions,

privileges or future employment opportunities. Plaintiff cites *Douglas* for the proposition that the necessary "objective tangible harm" from an adverse employment action may have subjective elements and does not always include economic harm. (Pl.'s Opp. 10). *Douglas* also explains that although the above-mentioned categories may contain subjective elements, "it is obvious that each significantly changes an employee's status." *Douglas*, 559 F.3d at 552. For employment actions that do not clearly result in a significant change in employment status, an employee must "[demonstrate] how the decision nonetheless caused such an objectively tangible harm." *Id.* at 553. This requires a consideration of whether the alleged harm is "unduly speculative." *Id.* *Douglas* provides examples of employment actions causing harm that is not unduly speculative; however, these examples all suggest an effect on a plaintiff's compensation. *Id.* According to the standards provided by the plaintiff's cited case, the Court finds that plaintiff has not alleged any objectively tangible harm from NDW's failure to restore plaintiff to his old shift. It does not cause a significant change in plaintiff's employment status and plaintiff's alleged harm is unduly speculative.

### C. Retaliation

Plaintiff alleges that NDW engaged in several acts of retaliation against him which constitute a violation of his civil rights under Title VII, 42 U.S.C. § 2000e-3(a), including the five-day suspension in January 2012 and the denial of his supervisor's request for shift change. Plaintiff must allege sufficient facts to infer (1) that he engaged in protected activity opposing discrimination; (2) that he suffered a materially adverse employment action by his employer; and (3) that there was "a causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal citations omitted); *see also Jones v. Bernanke* 557 F.3d 670, 677 (D.C. Cir. 2009). The only employment actions that could

plausibly be considered retaliation must have taken place after plaintiff engaged in protected activity. Therefore, this Court addresses only the alleged retaliatory actions that took place after plaintiff filed the September 4, 2010 EEO complaint.

### 1. *Five-Day Suspension*

Plaintiff's claim that the five-day suspension constitutes retaliation must be dismissed for failure to state a claim because the alleged facts do not support an inference of a causal link between plaintiff's protected activity and his January 2012 suspension. The January 2012 suspension was proposed in January 2011, approximately four months after plaintiff's EEO complaint. Where the two events are very close in time, temporal proximity can support an inference of causation. *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003). In this case, the adverse action is too far removed from the protected activity to be considered "very close" and infer causation.[5] *Clark Cnty. Sch. Dist. V. Breeden*, 532 U.S. 268, 273–74 (2001) (approving two cases that found three-month and four-month periods too far removed to be characterized as "very close") (internal citations omitted); *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (finding untenable an inference of retaliatory motive "based upon the mere proximity in time" between the protected activity and an adverse action two and one-half months later). Because plaintiff does not allege any other facts to infer a causal link between the September 2010 EEO complaint and the five-day suspension proposed four months later, plaintiff fails to state a claim of retaliation based on this suspension.

---

[5] The Court need not address whether the proposal for a five-day suspension or the suspension itself constitute an adverse employment action because plaintiff's retaliation claim on these grounds fails for another reason. A five-day suspension with pay is questionably an adverse employment action. Even if the suspension itself were an adverse employment action, taking effect in January 2012, the temporal proximity would be significantly further removed and the justification for dismissing this claim would be even stronger. The same is true if the protected activity were determined to be plaintiff's initial contact with an EEO counselor, which took place in July 2010.

## 2. *Denial of Supervisor's Recommendation for Shift Change*

Finally, plaintiff claims that NDW's denial of his supervisor's recommendation to change plaintiff's shift to allow him to have weekends off amounts to prohibited retaliation. This claim, however, must also be dismissed for the same reason that NDW's failure to restore plaintiff to his old shift upon his reinstatement is dismissed. Denying a shift change recommendation does not significantly change plaintiff's employment status, nor does it result in any objectively tangible harm. Thus, plaintiff fails to state a claim for retaliation on this basis as well.

## IV. CONCLUSION

In sum, defendant's Motion to Dismiss for failure to state a claim is GRANTED as to all of plaintiff's discrimination and retaliation claims.

A separate Order consistent with this Memorandum Opinion shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on Aug 21, 2014.